ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **LORENZO PÉREZ PARRILLA**<br>RECURRENTE(S)<br><br>V.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br>RECURRIDA(S) | **KLRA202400263** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA*<br>procedente del<br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br><br>Caso Núm.:<br>**PP-974-23**<br><br>Sobre:<br>Remedio Administrativo |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 30 de julio de 2024.

Comparece ante nos el señor **LORENZO PÉREZ PARRILLA** (señor **PÉREZ PARRILLA**), por derecho propio e *in forma pauperis*, mediante *Moción en Solicitud de Revisión Administrativa* incoada el 14 de mayo de 2024. En su recurso, nos solicita que revisemos la *Respuesta al Miembro de la Población Correccional* (*Respuesta*) dictada el 2 de febrero de 2024 por la División de Remedios Administrativos del **Departamento de Corrección y Rehabilitación (DCR)** acompañada de *Respuesta del Área Concernida/Superintendente*.[1] En la mencionada *Respuesta*, el **DCR** expresó:

"[s]e adjunta Respuesta del Área Concernida".

---

[1] Esta determinación administrativa fue notificada el 11 de marzo de 2024. Véase Apéndice del *Escrito en Cumplimiento de Resolución*, págs. 8- 9.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**- I -**

El 13 de diciembre de 2023, el señor **PÉREZ PARRILLA** suscribió una *Solicitud de Remedio Administrativo (Solicitud)* en la cual reclamó que:

> "al doctor Rodríguez Soto, director de servicios médicos y/o a quien concierna que calendarice a la mayor brevedad, una cita ante el especialista oftalmólogo para que de esta manera se realice una operación para la cual se me informó fui referido allá para el mes de octubre del 2022, por lo que ha transcurrido ya un año y varios meses. Recurrentemente he solicitado los servicios médicos para estos fines a través de sick call pues mi afección se agrava progresivamente resultando en el hecho que he perdido la visión prácticamente en su totalidad, los médicos que me han atendido se han limitado a recetarme gotas las cuales no surten efecto alguno[...]".[2]

La antedicha *Solicitud* fue entregada el 19 de diciembre de 2023 en la División de Remedios Administrativos del **DCR**. El 2 de febrero de 2024, se decretó la *Respuesta* impugnada acompañada de la *Respuesta del Área Concernida/Superintendente* que expresa: "[r]espondo a su solicitud de remedio administrativo indicándole que se desprende de nuestra investigación que usted fue evaluado en la clínica de oftalmología en octubre de 2023. Se recomienda seguimiento en la clínica en un año. De tener alguna necesidad clínica favor de solicitar el sick call o la sala de emergencia según la urgencia".

Ante ello, el 4 de abril de 2024, el señor **PÉREZ PARRILLA** presentó una *Solicitud de Reconsideración* en la cual enunció que "[e]l Dr. Rodríguez indicó que fui evaluado por la clínica de oftalmología en octubre 2023 y recomendó dar seguimiento al año. En el caso de marras no es un asunto común, es un asunto de necesidad especial por lo que mi petición va dirigida a atender la situación especial".[3]

El 22 de abril de 2024, se emitió una *Respuesta de Reconsideración al Miembro de la Población Correccional* en la cual se denegó la petición de reconsideración.[4] La mencionada *Respuesta* especificó: "[e]n consulta con el Dr.

---

[2] Véase Apéndice del *Escrito en Cumplimiento de Resolución*, pág. 4.
[3] *Íd.,* pág. 10.
[4] *Íd.,* págs. 12.

Joan M. Rodríguez Soto, Subdirector Médico del Complejo Correccional, informa que el miembro de la población correccional será evaluado en un año en la clínica de oftalmología. Información basada en la recomendación realizada por el oftalmólogo el día, el 25 de octubre de 2023. Cabe mencionar, que la cita se encuentra programada para el mes de octubre de 2024. De tener alguna necesidad clínica debe solicitar nuevamente un sick call o sala emergencia".

Inconforme, el señor **PÉREZ PARRILLA** compareció ante este tribunal intermedio revisor. El 5 de junio de 2024, pronunciamos *Resolución* concediendo un plazo de treinta (30) días al **DCR**, por conducto de la Oficina del Procurador General de Puerto Rico, para exponer su posición sobre el recurso incoado. Luego, el 10 de julio de 2024, el **DCR**, por conducto de la Oficina del Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Resolución* en la cual puntualizaron que la autoridad de programar citas de los miembros de la población correccional y determinar intervención quirúrgicamente son funciones exclusivamente de los facultativos médicos contratados por el **DCR**.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

A. *Revisión Administrativa*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[5] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[6]

---

[5] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[6] 3 LPRA § 9671.

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[7] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[8] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[9]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[10] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[11] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[12]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[13] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

---

[7] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).
[8] *Otero v. Toyota*, 163 DPR 716 (2005).
[9] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[10] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625- 626 (2016)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[11] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[12] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[13] *Torres Rivera v. Policía de PR, supra*.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[14]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[15] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[16] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[17] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[18] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[19] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[20]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[21] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde

---

[14] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[15] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[16] *Otero v. Toyota, supra*, pág. 728.
[17] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[18] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[19] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[20] *Íd.*
[21] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[22]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[23] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[24] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[25]

### B. *Reglamento 8583*

El 4 de mayo de 2015, se aprobó el *Reglamento 8583* conocido como el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional (Reglamento)*. El objetivo de dicho *Reglamento* es que todas las personas institucionalizadas tengan un ente administrativo, en primera instancia, en el cual puedan presentar una solicitud de remedio, con el objetivo de reducir las diferencias que pueda haber entre la población correccional y el personal.[26] Además, de poder evitar o reducir los pleitos ante los tribunales.[27]

Mediante el *Reglamento 8583* se creó la *División de Remedios Administrativo (División)* con el motivo de atender las quejas o agravios que tengan los penados en contra del organismo del **DCR** y su personal. La Regla VI del antes mencionado *Reglamento* dispone que la *División* tendrá jurisdicción para ventilar las quejas sobre cualquier incidente o reclamación que comprenda las disposiciones del

---

[22] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).

[23] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.

[24] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.

[25] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño*, 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

[26] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583 de 4 de mayo de 2015, pág. 1.

[27] *Id.*

*Reglamento.*[28] En lo que respecta a las responsabilidades de los reclusos los remedios solicitados deben ser claros, concisos, honestos y de buena fe.[29]

El recluido que tenga una queja presentará una solicitud de remedio ante la *División*. La reclamación será examinada por un evaluador. Si el internado no está conforme, este puede interpelar una reconsideración ante el coordinador dentro un término de veinte (20) días a partir la notificación de la *Respuesta*.[30] En el caso de que el coordinador deniegue de plano o no conteste la solicitud de reconsideración podrá acudir en *revisión judicial* ante el Tribunal de Apelaciones en un término de quince (15) días.[31]

- III –

En su escrito, el señor **PÉREZ PARRILLA** no hizo señalamiento de error alguno. Alegó que en su *Solicitud de Remedio Administrativo* pidió que el doctor Rodríguez Soto, director de servicios médicos, y/o a quien concerniera, le calendarizara a la brevedad, una cita con un especialista oftalmólogo. Además, que había acudido a los servicios de sick call, pero su afección no ha mejorado. Así las cosas, nos solicita que revisemos la *Respuesta* decretada el 2 de febrero de 2024 por la División de Remedios Administrativos del **DCR.**

Por otro lado, el **DCR** adujo que no tiene autoridad para programar las citas a los miembros de la población correccional ni determinar que uno de éstos debe ser intervenido. Dichas funciones pertenecen exclusivamente a los facultativos médicos contratados por el **DCR.** Esto es, la determinación sobre si procede o no alguna intervención quirúrgica le corresponde al profesional médico especializado que haya evaluado al paciente. Acreditó que no se le ha negado tratamiento médico al señor **PÉREZ PARRILLA** y se le ha orientado que de tener necesidad clínica debe acudir a un sick call o sala de emergencia**.** Toda vez que, ello surge de la exposición del señor **PÉREZ PARRILLA** al aceptar que ha acudido a sick call y se le ha recetado gotas.

---

[28] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583* de 4 de mayo de 2015, pág. 13.
[29] *Id.,* pág. 15.
[30] *Id.,* pág. 30.
[31] *Id.,* pág. 31.

Consideramos que no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa del **DCR.** El señor **PÉREZ PARRILLA** fue evaluado en octubre de 2022 y octubre de 2023; se le dio cita para dentro de un año (octubre de 2024); y se le recomendó que de tener necesidad clínica, debe solicitar nuevamente sick call o sala de emergencia. Es el personal médico, quien luego de evaluar, debe determinar el tratamiento médico a ofrecer al señor **PÉREZ PARRILLA.** Por ende, no se nos ha colocado en posición de alterar la decisión administrativa. En consecuencia, no procede que sustituyamos el criterio administrativo por la nuestra. Tampoco se ha demostrado que la agencia administrativa haya actuado de manera arbitraria o ilegal, o en forma tan irrazonable que haya abusado de su discreción. Consecuentemente, discernimos que el **DCR** no ha incurrido en error alguno.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Respuesta al Miembro de la Población Correccional* expedida el 2 de febrero de 2024 por la División de Remedios Administrativos del **Departamento de Corrección y Rehabilitación (DCR)**.

**Notifíquese inmediatamente.**

**Notifíquese al(a la) señor(a) LORENZO PÉREZ PARILLA quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación: Institución Ponce Principal Fase 4-M-R-331 Ponce By Pass 3699 Ponce, PR 00728-1500 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones